and his family, Katia, Adonis, and Mengi. We are here to request that this case be remanded back to the Immigration Court so that my clients can receive a full and fair hearing in this matter. We are contending that the immigration judge failed in his affirmative duty to help a pro se respondent fully develop his record in this manner. This is shown multiple times throughout the transcript. A total of at least 14 times he was cut off and told what he was not allowed to do and what he was expected to state. Initially, when the judge explained to him how the case was going to proceed, he advised that the immigration judge would be asking him questions, then the government counsel would ask him questions, but he was never advised that he would be able to make a statement on his own behalf. In addition, there is other confusion. There's a pre-hearing statement which states that documents have to be in English. As counsel, I understand that that means it has to be certified, however, he had documents that could have possibly overcome the credibility analysis in this manner, and they were not viewed because they were provided without a certified translation, and he was never clearly advised that he could have the opportunity to bring those back. Your time is clicking down. I wonder if you could just address the credibility determinations that you raised in your brief. So the issue of adverse credibility was found on the client, and we are contending that the immigration judge did not take into consideration the trauma that he was affected, or we also believe that there was clear and erroneous error, because he says that he was inconsistent with his answers. However, after reading the transcript, it is clear that he is trying to provide information. He is not evading questions. He's trying to provide information, and sometimes it's far more than the immigration judge would like to have. There is also an issue of a location of being struck on the leg during one of the marches that he was involved in as a member of UNITA. The question was where he was hit. He speaks the language Lingala. It is a Bantu language, but it's primarily oral, and then it later on became written. There can be issues with translation in there, which we did discuss in our brief. He, in an application, he mentioned his foot. He said he was hurt when he was running away from the police. In the initial I-589 application, he does not state that the police struck him. That was stated in the testimony. There was never a declaration that was provided to the court to more fully develop that information. The application provides a summary, detailed, and then, of course, there's the anticipation that more detail will be provided and elicited through testimony at the hearing, which he did provide. His wife also made the statement that her husband hurt himself, and although she did not specifically state that he was hurt by the police, that could simply be an issue of translation, which is also another problem that was raised, is the fact that he speaks four languages, and the judge stated that that made him sophisticated. He speaks four languages because that's what's spoken in his area, and the Portuguese that he speaks is not the same as Brazilian Portuguese, which is commonly, which was what was used during the translation of his application, and there's also a question of whether or not that application was completely read back to him. Even in the transcript, when the IJ asked if the application was read back to him in a language he understood, he specifically stated that the group he was working with, the nonprofit he was working with, tried to get an interpreter on the phone. He was cut off, and the judge said, this is a yes or a no question, and then his statement was I'm aware of what is in my application, but it's never clear that it was actually read back to him. He knows what he said, but he does not speak or write or read English. So in your view, the evidence doesn't support the agency's adverse credibility determination? Yes, Your Honor. Or is it they're just trivial, immaterial, or what? Yes, we believe that they are trivial and immaterial differences. We believe that there was not a scrupulous probing of the information to determine if there was, if there should have been a credibility finding. We also believe that the judge knew that he had those concerns, and there was another witness there that he could have called. Joao was not aware that he was allowed to call another witness later. He was not aware that that could have changed things. He made the statement multiple times that he really was his. The other witness was his wife. What would she have added? She would have been able to tell what happened when he came home, what he had told her when he came home. So she could have corroborated what was said. She could have provided different information about his injuries and his wounds, about the people coming to the home. But we won't know because she was not called to the stand. They also asked multiple questions of Joao about Menge's application, and so they could have asked her about what was in her application. So there was a full record developed. I'm not objecting to most of what you said, but I'm concerned about the issue as to whether or not there was an obligation on the part of the IJ to call the wife or to say to him you could call the wife. Because ordinarily it's in the hands of the petitioner to present the witnesses he or she wants to do. To say to the IJ, you know, you're supposed to say, I see somebody sitting back there in the back. Do you want to have him or her come forward? That's an odd and maybe tricky sort of obligation, because maybe the person doesn't want to call that person, and then he's on the spot like, well, no, actually, I don't want to call my wife. And then the question, well, why not? So I'm a little concerned about saying that there's just an obligation on the part of the IJ to say, you know, you've got a possible witness there in the back, why don't you bring her forward? So there's an affirmative obligation of an IJ to fully develop the record when there is a pro se respondent. They're able to call witnesses anyway, just as, like, you know, just as the government attorney is able to call witnesses. And I'm so sorry, I forgot to say that I wanted to reserve time for a rebuttal. Would you like to reserve the balance? Yes, please. I would like to reserve the balance. Thank you. Can you just wait one second? Arden, can we move up the screen so that we can see Ms. Jarwan? Yeah, you may not be aware of it, but you're about to be elevated. Just give us one second while we work out the technology here. No problem. That's okay. I think, are you all okay with proceeding? Can you see her okay?  Yeah, I'm okay. All right. We're going to, you're not quite as elevated as we would have liked to have made you, but I think we can see you. And so you may begin when you're ready. Thank you, Your Honors. May it please the Court, Rhea Tarawan on behalf of the respondent, the Attorney General. In this matter, the substantial evidence does, in fact, support the immigration judge's adverse credibility finding as affirmed by the Board. There were two different incidents here, a June 2019 incident and a May 2021 incident that the petitioner testified to. The May 2021 incident seems to have been waived in the opening brief, so I'll focus on the June 2019 incident. Is your argument with respect to the June 2019 incident that the adverse credibility determination is supported because there was an omission? It's both an inconsistencies and omissions. The inconsistencies- Well, let me focus for a second on the omission part of your argument. I'm finding trouble with the argument that the omission of information that would be helpful for the petitioner can constitute an omission for purposes of determining an adverse credibility. Can you point me to any case that says that a petitioner's failure, when other documents consistently notate a particular incident, but then there is one place where information or an event that actually further supports the petitioner's claim is omitted, that can constitute an omission for purposes of an adverse credibility determination? Well, I think I first would ask the question, and perhaps I'm not understanding which omission. The asylum application claims that both of them, the wives and the husbands, that the But in his testimony, he actually tries to enhance his alleged persecution claim by claiming that he was actually hit by the police with a weapon. So that's a very stark contrast to what he said in his asylum application. He omits from his asylum application that he was actually hit by the police. So I think that's the omission that I was discussing. And that's what I'm talking about as well. So can you cite me to a case that says when a petitioner fails to include information that further supports their claim, that constitutes an omission? Well, he is omitting it from his asylum application. Is that what you mean, Your Honor, that he omitted information that is helpful to his persecution? It was in his form I-589, correct? Correct. So he omitted information that would have helped him, and then he enhanced his claim in his testimony. Right. So I guess my question is, why would he omit information that would help him? Well, Your Honor, that's the basis of the credibility decision. Did this incident even happen the way he's saying it happened now in testimony? Because if it happened the way he described it in the asylum application, then that's not sufficient for a persecution claim or alleged persecution claim. But if he's enhancing his claim in testimony and claiming that something worse happened to him, that's certainly a credibility issue that the immigration judge took consideration of. Because once a petitioner is enhancing his claim or omitting information that it doesn't make sense he would omit, considering this is the basis of his persecution claim, this credibility. Do you have a case that you can cite to me, Counsel? I don't have one right now, Your Honor. I can certainly send you a 28-J letter and submit that to you. But generally, omissions are probative and important evidence for any immigration judge and the board to consider. Because, again, this is the basis of his persecution and torture claim. So to omit that important fact that you were actually hit by the police as opposed to just ran away and happened to hurt yourself, that's a very important omission. It's still part of the totality of the circumstances that need to be considered in this case. Could I just ask you one follow-up question along there? Sure. I thought he said in the I-589 something to the effect that the police killed two people from our group. Yes. And I managed to escape with a foot injury. Right. That's correct, Your Honor. And it seems to me that that at least could be contrued as, I escaped with a foot injury inflicted by the police, not that I injured it while I was running. Well, I think the standard is, what is the reasonable fact finder here considering? Can I ask you about that in terms of the reasonable fact finder? I'm looking at the footnote on ER-67. It's footnote one. And I'm curious to know your view about what you make of this footnote, which indicates a real significant animus towards the petitioner. I wouldn't call it an animus, Your Honor. I think that based on the totality of the record, this immigration judge was frustrated. They are humans. They are frustrated when the immigration proceedings go off track, which they did multiple times in this case. The immigration judge wrote an 18-page detailed written decision, which I don't see very often. You know, the IG's frustration, it's really, I'm very troubled by it because in most of the cases that we have where a petitioner is deemed to be unresponsive and therefore not credible, it's because they are refusing to answer a question. They're evading the questions that are being presented to them. They're not speaking in response. And here what we have is a petitioner that is trying to, to the best of his ability, explain and respond to the questions being asked of him by the IJ. And it's sort of a, you know, damned if you do, damned if you don't situation. Here he's now dinged for being too responsive. His answers are long-winded and he's trying to be responsive. And so he's then determined to be unresponsive and not credible. And this footnote sort of, for me anyway, indicates that this isn't a reasonable fact finder who is making these determinations. The government's position is that this was a reasonable fact finder who, through a very difficult process, was able to get as much information as a petitioner on directing him to answer a specific question. And there's a half a dozen almost different examples in the immigration judge's decision where he has to ask more than three or more times to get back on track to answer the question. And there are times where he would ask the petitioner for an explanation and the petitioner wouldn't even answer that question and would start talking about a different incident entirely. And the immigration judge also gave multiple admonishments but also instructions on how to testify, why we need to get back on track and answer the question. Because the immigration judge, in order to assess credibility and assess the merits of this case, needs to have the consistent information in front of him. And if he doesn't understand, if he doesn't get coherent responses from the petitioner about what exactly happened to him, then he cannot be a fact finder. He's simply just taking in a narrative that doesn't make any sense. And so while I understand that the frustration came through, specifically in that footnote, the demeanor case law also requires that the immigration judge give specific instances of both verbal and nonverbal nonresponsiveness or demeanor findings. And I would note the Rodriguez-Ramirez case that the board cites, and it says, that simply because the record reflects that Rodriguez-Ramirez did, in fact, eventually provide some answer to the questions, does not undermine the immigration judge's finding of evasiveness. Because these immigration judge demeanor findings are given special deference, and the immigration judge is in this unique position to have in-person observations. So unlike the reviewing courts that have a cold record that they're reading, the immigration judge is in court specifically to view this petitioner, view how they testify, understand and assess their demeanor, their candor, their responsiveness. So the case law itself requires the immigration judge to give specific instances, descriptions, and examples. And I think in that footnote, the immigration judge is giving his honest assessment of this petitioner. And as the reviewing court, you know, the standard is not to go back and second guess what the immigration judge did. The standard is, does the record compel reversal of what the immigration judge did? Would no reasonable fact finder make this same determination? I don't think that's true. I think there are many reasonable fact finders who would agree with this immigration judge. The standard for us is substantial evidence, correct? Correct. Whether or not substantial evidence supports the determination, correct? In the totality of the circumstances, yes. Okay. Can you address the argument that your friend on the other side made with respect to whether or not the I.J. had a duty to affirmatively develop the record? And specifically, I'm hoping that you can talk about our case, Zamorano v. Garland, and whether that case required the I.J. to ask for the testimony of the wife who was present at the hearing, given that the petitioner was proceeding pro se. If I remember correctly in Zamorano, is this the case in which he was told that unless his wife was physically present at the hearing, the application would be denied? And I think that's a very specific statement for an immigration judge to make. And the wife had medical issues that prevented her from attending the hearing, and the immigration judge was informed of that, if I remember this case correctly. In our case here, the immigration judge specifically asked the petitioner, would you like your wife to testify? And she was in the immigration court, and he said no, she is not a member of the political party. And later on, the immigration judge makes a finding that she was not a witness to these incidents. So the immigration judge is not obligated to act as counsel for a pro se petitioner. Would you agree that the I.J. is responsible for developing the record to the fullest extent possible, given the pro se nature of the petitioner? Yes, and I think he did that. In fact, he spent a significant amount of time trying to develop this record. The fact that the petitioner had a difficult time providing those answers doesn't diminish the fact that the immigration judge spent a significant amount of time reflected in this 18-page written decision trying to flesh out what exactly happened, laying out the inconsistencies that the immigration judge saw in the record. I think there's no doubt that the immigration judge spent a significant amount of time questioning the petitioner, and he certainly never cut him off like some of the other case law that reflects an inability of the petitioner to not even express what happened to him. Let me see if my colleagues have any further questions. If not, can you please provide us with your closing statement, because you're out of time.  With respect to the language request, I will very briefly mention that the Counsel, I need you to conclude because you're out of time, so I don't think you have time to go into another issue, but if you want to make a concluding statement, I'd be happy to take that from you. Yes, Your Honor. In summary, Your Honors, the substantial evidence in this case certainly supports not only the adverse credibility decision, but also the denial of the CAT claim. In this matter, the respondent would rest on any of the other arguments that were made in the answering brief. The petitioner not only had an adverse credibility determination that affected his CAT claim, but he also was unable to demonstrate he had a particular risk of torture in Angola. With that, I would rest on the remaining arguments in my answering brief. Thank you. Thank you very much. Thank you. Your Honors, Ms. Joelle made no attempt to bolster his claim through the omissions. They simply just provided details that there was not space to apply in his application. There is a case, I believe it's a matter of S.A., I can forward it to the, it is quoted in our brief, that does say that omissions do not go to, are not held in the same manner as inconsistencies. It also states that the additional information, it was not inconsistent, it was just to provide further details of the events, given the fact that there is a small area on that application. I do believe that in the totality of these circumstances, my client was not provided the option, while he was a pro se respondent, to completely answer his questions. He was admonished, not instructed, admonished a total of 14 times during that initial hearing. I don't even believe they went 15 minutes into the second hearing before he was once again admonished to say that this is, that he was taking too long in providing answers. Who are we to decide how long it's required to answer questions when it is the life of these individuals? Do you attribute most of what happened at the hearing as a translation problem? I think there may have been some translation issues in that first hearing. When you read the transcript, there's some strange words that may be there typos, but I do believe that there was definitely some translation issues. Lingala, the word leg, covers everything from your hip to your ankle. So they don't really have specific areas for that. So depending on who was doing that translation, they may have picked a different body part. Also, there's the issue of where the police hit him versus where he was hurt. None of that was really fully developed. There wasn't a lot of things followed up on that. The same with when he was kept at the camp. There wasn't a lot of questions that were really used to follow up about the torture. Where there was plenty of questions to follow up about what struck him, I think at one point somebody asked him if it was a bow and arrow, because he said it shot. So the transcript shows that there were times when they took plenty of time to ask questions, and then there were times when they did not develop. And when it comes to the issue of inconsistency, potential adverse credibility, there is an enhanced duty of the IJ to, for a pro se respondent, to make sure that they are aware of that problem. He did not advise Joelle that, maybe he didn't have to call Menge, but he could have advised Joelle that he had the opportunity to call her to get additional information. He could have just advised him that he was allowed to make a statement. He didn't even allow him to make a closing statement or closing argument. When at the very end of the hearing, he said, is there anything further you would like to add? But you are not allowed to go over anything we've already talked about. Okay, counsel, you're out of time. Would you like to make a closing statement? No, we will rest with what we have. Thank you very much. Thank you so much for your time today. Thank you to both counsel for your argument. In this case, the matter is now submitted.
judges: FLETCHER, PAEZ, DESAI